IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES *ex rel.*        )
BENJAMIN CARTER,               )
                               )
     Plaintiff,                )
                               )
                               )    1:11cv602 (JCC/JFA)
          v.                   )
                               )
HALLIBURTON CO.,               )
*et al.*,                      )
                               )
     Defendants.               )


# M E M O R A N D U M   O P I N I O N

This matter is before the Court on supplemental

briefing for Defendants Halliburton Company ("Halliburton"),

KBR, Inc. ("KBR"), Kellogg Brown & Root Services, Inc.

("KBRSI"), and Service Employees International, Inc.'s ("SEII")

(collectively, "Defendants") Motion to Dismiss [Dkt. 11],

following the Fourth Circuit's decision in *United States ex rel.*

*Carter v. Halliburton Co.*, 710 F.3d 171, 174 (4th Cir. 2013)

that reversed this Court's November 29, 2011 opinion and

remanded the case for consideration of the public disclosure

bar.[1]  For the following reasons, the Court finds that the public

disclosure bar does not prevent Relator Benjamin Carter

("Relator" or "Carter") from bringing this suit and accordingly,

---

[1] In analyzing the public disclosure bar, the Court considered the parties'
arguments on this issue in both their original and supplemental briefing.

this Court will deny Defendants' Motion to Dismiss with regards to the public disclosure bar.

## I.   Background

### A.   Factual Background

The subject matter underlying this case has been before this Court multiple times previously and involves the Defendants' alleged fraudulent billing of the United States.  As set forth below, this case is identical to two earlier cases dismissed by this Court and related to several other earlier cases filed in other district courts.

#### 1.   Carter's Allegations

In his Complaint, Carter brings a *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729 through 3733 (the "FCA"), alleging that Defendants falsely billed the Government for services provided to United States military forces serving in Iraq.

Specifically, Carter alleges that Defendants "knowingly presented [or caused to be presented] to an officer or employee of the United States Government . . . false or fraudulent claims for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).  (Compl. [Dkt. 1] ¶¶ 157-58.[2])  Carter also alleges that "Defendants knowingly made, used, or caused to be

---

[2] The Complaint has two sets of paragraphs 157 and 158.  This citation refers to the second set, on page 32 of the Complaint.

2

made or used, false records or statements to get false or
fraudulent claims paid or approved by the Government" in
violation of 31 U.S.C. § 3729(a)(2).[3]  (Compl. ¶¶ 192-93.)

These allegations stem from Carter's work as a Reverse
Osmosis Water Purification Unit ("ROWPU") Operator in Iraq from
mid-January 2005 until April 2005.  (Compl. ¶¶ 3, 41, 69.)
During that period, Carter worked at two camps, Al Asad and Ar
Ramadi. (Compl. ¶¶ 41-42.)

Carter alleges that "the Al Asad Defendant ROWPU
employees were not engaged in any actual water purification
duties on discrete dates in January 2005," but nevertheless, the
"Al Asad ROWPU employees' time [was] billed under LOGCAP[4] III" as
if they had been purifying water.  (Compl. ¶¶ 130-31.)
Similarly, while working at Ar Ramadi, Carter was allegedly
"required to fill in timecards stating that he worked 12 hour[s]
a day, each day, with uniformity, on ROWPU functions," though
during this time Carter "actually worked 0 hours per day on
ROWPU functions."  (Compl. ¶¶ 54-55.)  Carter also alleges that
all "trade employees" such as he were required to submit time
cards totaling "exactly 12 hours per day and 84 hours per week"

---

[3] Section 3729(a)(1) has been re-codified at 31 U.S.C. § 3729(a)(1)(A) and
section 3729(a)(2) has been re-codified at 31 U.S.C. § 3729(a)(1)(B).
[4] As noted in this Court's May 10, 2010 Memorandum Opinion in 1:08cv1162,
LOGCAP III was the Logistics Civil Augmentation Program ("LOGCAP") contract
put out by the Department of Defense for civil logistical support for
military operations in Iraq, Afghanistan, and other countries.

and that it was their "routine practice" to do so.  (Compl. ¶¶ 60-61, 65, 67-68.)

In essence, Carter contends that Defendants had knowledge that at the Ar Ramadi and Al Asad camps in Iraq, ROWPU "personnel were not engaged in any water testing or purification duties in support of the LOGCAP Contract," and that "Defendants were billing the Government for work that was not actually performed."  (Compl. ¶¶ 163, 166.)

B.   Procedural Background

1.   2008 Carter

Carter filed an earlier case in this Court against Defendants, Civil Action No. 08cv1162 (JCC/JFA) ("2008 Carter"). Relator originally filed 2008 Carter on February 1, 2006 in the United States District Court for the Central District of California, with a first amended complaint filed on February 10, 2006.  (1:08cv1162 [Dkt. 5].)  2008 Carter was transferred to this Court on November 3, 2008.  (1:08cv1162 [Dkt. 73].)  This Court dismissed Carter's first amended complaint in 2008 Carter on January 13, 2009, granting leave to amend.  (1:08cv1162 [Dkt. 90].)  Carter filed a second amended complaint in 2008 Carter on January 28, 2009.  (1:08cv1162 [Dkt. 92].)

In July 23, 2009, this Court dismissed Counts 2 and 3 of Relator's second amended complaint in 2008 Carter in their entirety; dismissed Count 1, alleging that Defendants knowingly

4

submitted false claims to the United States, except as it related to September 1, 2004 through April 2005 for Ar Ramadi, and during January 2005 for Al Asad, (*See* Memorandum Opinion ("Mem. Op.") at 19, 22, 1:08cv1162 [Dkt. 121] (July 23, 2009)); and dismissed Count 4, alleging that Defendants knowingly made or used false records or statements material to a false claim, except as it related to the time cards of the Ar Ramadi ROWPU employees from September 1, 2004 to April 2005 (*id.* at 34).

Later, in May 2010, this Court dismissed the remainder of 2008 Carter without prejudice for lack of jurisdiction. (1:08cv1162 [Dkt. 307].)  The Court held that 2008 Carter was barred by § 3730(b)(5) of the FCA, which bars a relator from "bring[ing] a related action based on the facts underlying [a] pending action," known colloquially as the FCA's "first-to-file bar."  31 U.S.C. § 3730(b)(5).

## 2.   California Action

The first-filed "pending action" barring 2008 Carter was *United States ex rel. Thorpe v. Halliburton Co.*, No. 05cv08924 (C.D. Cal.), filed on December 23, 2005 ("California Action").  (Mem. Op. at 2, 15-19, 1:08cv1162 [Dkt. 306] (May 10, 2010).)

On March 23, 2010, in the week before 2008 Carter was set for trial, the Department of Justice ("DOJ") disclosed to the parties the existence of the California Action.  Defendants

moved to dismiss 2008 Carter under § 3730(b)(5)'s first-to-file bar, and this Court dismissed 2008 Carter without prejudice on May 10, 2010.  (1:08cv1162 [Dkt. 307].)

After this Court dismissed 2008 Carter, the California Action was dismissed on July 30, 2010.  (Mem.[Dkt. 16] at 4.)

### 3.   2008 Carter Appeal

Relator filed a notice of appeal to the Fourth Circuit on July 13, 2010.  (1:08cv1162 [Dkt. 325].)  Carter moved to dismiss the appeal on December 14, 2010.  (Mem. at 4.)  The Fourth Circuit dismissed the 2008 Carter appeal on February 14, 2011.  (1:08cv1162 [Dkt. 331, 332].)

### 4.   2010 Carter

Carter filed a second case in this Court on August 4, 2010, Civil Action No. 10cv864 (JCC/TCB) ("2010 Carter").  The Court dismissed 2010 Carter in May 2011, again holding that the case was barred by the FCA's first-to-file bar.  (Mem. Op. at 10-11, 1:10cv864 [Dkt. 46] (May 24, 2011).)  Specifically, the Court noted that 2010 Carter was filed while the appeal in 2008 Carter -- and, thus, 2008 Carter itself -- was still pending. (*Id.* at 10.)  Because the two cases were indisputably related, the Court dismissed 2010 Carter without prejudice. (*Id.* at 10-11, 13.)

5.   <u>The Instant Action</u>

Carter filed this case on June 2, 2011.  [Dkt. 1.]
The United States declined to intervene on August 23, 2011.
[Dkt. 3.]  This Court unsealed the Complaint on August 24, 2011.
[Dkt. 4.]  Carter's complaint in this case is identical to the
complaint filed in 2010 Carter and the second amended complaint
filed in 2008 Carter, except for its title, case number, and
signature block.

On October 21, 2011, Defendants filed a Motion to
Dismiss the Complaint pursuant to Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss").  [Dkt.
11.]  In that motion, Defendants argued that (1) the Court
lacked jurisdiction under the FCA's "first-to-file" bar, 31
U.S.C. § 3730(b)(5), (Mem. at 5-13), based on the California
Action and two other related actions which at the time were
pending (*United States ex rel. Purcella, et al. v. Halliburton,
Inc., et al.*, No. 2:04cv205 (E.D. Tex.) (under seal) ("Texas
Action") and *United States ex rel. Duprey v. Halliburton, Inc.,
et al.*, No. 8:07cv1487 (D. Md.) ("Maryland Action")); (2) the
Court lacked jurisdiction under the FCA's public disclosure bar,
31 U.S.C. § 3730(e)(4)(A); and (3) even if neither
jurisdictional bar applied, virtually the entire case must be
dismissed due to the FCA's six-year statute of limitations.

7

Following a hearing on November 18, 2011, this Court granted Defendants' Motion to Dismiss with prejudice on November 29, 2011, holding that the Court lacked jurisdiction under the "first-to-file" bar based on the Maryland Action and also that all of Relator's claims were time-barred except one minor claim under the FCA. [Dkts. 41-42.] In its opinion, the Court did not address the public disclosure bar argument because the Court concluded that it need not reach that issue to dispose of Defendants' Motion to Dismiss.

Relator filed a notice of appeal on December 28, 2011. [Dkt. 59.] On March 18, 2013, the Fourth Circuit reversed this Court's decision to dismiss Relator's complaint with prejudice. The Fourth Circuit found that Relator's claims were not time-barred under the FCA due to tolling under the Wartime Suspension of Limitations Act ("WLSA"). *Carter*, 710 F.3d at 174, 181. It also found that Relator's current complaint was barred under the first-to-file bar by the Maryland Action and Texas Action because those actions were pending at the time Relator filed his latest complaint. The Fourth Circuit concluded, however, that the first-to-file bar no longer precluded Relator from filing an action because both related actions currently were no longer pending. This Court, therefore, erred by dismissing the case with prejudice. As this Court had not addressed the parties' arguments regarding the FCA's public disclosure bar, the Fourth

8

Circuit remanded the case for further proceedings on that issue. The Fourth Circuit rejected Relator's petition for rehearing *en banc* on April 23, 2013.

Following a status hearing held before this Court on May 28, 2013, the Court ordered supplemental briefing on the parties' arguments, in particular the public disclosure bar.  On June 24, 2013, Defendants filed their Supplemental Brief in Support of Defendants' Motion to Dismiss Under the Public Disclosure Bar.  ("Supp. Mem" [Dkt. 81].)  On July 15, 2013, Relator filed his Supplemental Brief in Support of Relator's Opposition to Defendants' Motion to Dismiss Under the Public Disclosure Bar.  ("Supp. Opp." [Dkt. 83].)  On July 25, 2013, Defendants filed their Supplemental Reply Brief in Support of Defendants' Motion to Dismiss Under the Public Disclosure Bar. ("Supp. Reply" [Dkt. 84].)  The Court held a hearing on the supplemental briefing on September 6, 2013.

## II.   Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F.

9

Supp. 2d 779, 780 (E.D. Va. 2002).   In such instances, all facts alleged in the complaint are presumed to be true.   *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.   In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"   *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff.   *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the

Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

### III.  Analysis

Defendants argue that Relator's claims are barred under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), which jurisdictionally bars FCA claims that are based on matters that were publicly disclosed unless the relator was the "original source" of the allegations.  (Mem. at 16.)

#### A.  Retroactivity of the PPACA

Before reaching the merits of this argument, the Court must first determine the applicability of the Patient Protection and Affordable Care Act ("PPACA") amendments to the FCA, which were signed into law on March 23, 2010, before the filing of this action.  *See* Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901 (2011).  Defendants argue that because the PPACA amendments are not expressly retroactive and they attach a new disability to past conduct, they "cannot be applied to the conduct alleged in this case, all of which occurred before PPACA was enacted."  (Mem. [Dkt. 16] at 16 n.11; *see* Supp. Mem. [Dkt. 82] at 3.)  Carter argues that the PPACA amendments should apply because the instant complaint was filed after the PPACA was passed and made effective and therefore he contends that no retroactivity is required for the PPACA to apply here.  (Opp. [Dkt. 21] at 20; Supp. Opp. [Dkt. 83] at 15.)

11

The Court concludes that the pre-PPACA version of the FCA applies to this case.  Certain provisions of the FCA, including the public disclosure bar, were amended by the PPACA in March 2010.  The Supreme Court recently recognized that application of these amendments would have retroactive effect because they "eliminate[d] petitioners' claimed defense to a *qui tam* suit" and that the PPACA lacked the necessary clear congressional intent for retroactive application as it "makes no mention of retroactivity."  *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson ("Wilson")*, 559 U.S. 280, 283 n.1 (2010) (citing *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997)).

In *Hughes Aircraft*, the Supreme Court previously addressed the retroactive application of an FCA amendment to a disclosure jurisdictional bar.  Prior to 1986, FCA *qui tam* suits were jurisdictionally barred if the information on which they were based was already in the Government's possession.  *Hughes Aircraft*, 520 U.S. at 941.  In *Hughes Aircraft*, the Court addressed whether the 1986 amendment to the FCA partially removing that bar applied retroactively to *qui tam* suits brought *after* the 1986 amendment but alleging false claims submitted *before* the enactment of the 1986 amendment.  *Id*. at 941, 943.  A unanimous Court held that the 1986 amendment did not apply retroactively to conduct occurring prior to the 1986 amendment's

effective date.  *Id*. at 951.  The Court reasoned that "the 1986

amendment eliminates a defense to a *qui tam* suit -- prior

disclosure to the Government -- and therefore changes the

substance of the existing cause of action for *qui tam* defendants

by 'attach[ing] a new disability, in respect to transactions or

considerations already past.'"  *Id*. at 948 (quoting *Landgraf v.*

*USI Film Products*, 511 U.S. 244, 269 (1994)).  Accordingly,

application of the amendment to conduct occurring prior to the

amendment's effective date would result in a retroactive effect

on such conduct.  The Court distinguished the 1986 FCA amendment

from "[s]tatutes merely addressing *which* court shall have

jurisdiction to entertain a particular cause of action," which

"can fairly be said merely to regulate the secondary conduct of

litigation and not the underlying primary conduct of the

parties."  *Id*. at 951 (emphasis in original); *see also Gordon v.*

*Pete's Auto Service of Denbigh, Inc.*, 637 F.3d 454, 461 (4th

Cir. 2011) (stating that "the [FCA,] at issue in *Hughes Aircraft*

. . . had retroactive effect because it '[did] not merely

allocate jurisdiction among forums' but instead 'create[d]

jurisdiction where none previously existed").  The Court

concluded that "[g]iven the absence of a clear statutory

expression of congressional intent to apply the 1986 amendment

to conduct completed before its enactment, we apply our

presumption against retroactivity" and applied the pre-amendment

FCA in construing the government disclosure jurisdictional bar. *Hughes Aircraft*, 520 U.S. at 951.

The Supreme Court's reasoning in *Hughes Aircraft* controls the issue because here, like in that case, an FCA amendment modifies a prior jurisdictional bar based on disclosure of the facts underlying the suit and the amendment is silent as to its retroactivity. Similar to the facts in that case, Carter brought this suit after the enactment of the PPACA, alleging violations by Defendants committed in 2005 before the enactment of the PPACA. In addition, as recognized in *Graham*, the amendment creates jurisdiction where none previously existed, meaning application of the PPACA amendments would have retroactive effect. Finally, the presumption against retroactivity applies here because, as recognized in *Wilson* and *U.S. ex rel. Black v. Health & Hosp. Corp. of Marion Cnty.*, 494 F. App'x 285, 291 n.9 (4th Cir. 2012), the PPACA amendments lack the clear congressional intent necessary for retroactive application. Accordingly, the PPACA amendments to the public disclosure bar do not apply retroactively, and the Court will apply the public disclosure bar using the pre-PPACA statute.

Carter argues that because he brought this suit after the PPACA amended the FCA, the amended statute should apply. (Opp. at 20.) The Supreme Court addressed that argument in *Hughes Aircraft* and dismissed it. *See Hughes Aircraft*, 520 U.S.

14

at 946 ("Because the 1986 amendment became effective before this suit was commenced, respondent contends that it, rather than the 1982 *qui tam* provision, controls.  We disagree.")  Accordingly, the fact that the PPACA became effective before this suit was commenced will not alter this Court's application of the pre-PPACA FCA.

B.   The Public Disclosure Bar

Section 3730(e)(4)[5], referred to as the "public disclosure bar," provides as follows:

> (A)  No  court  shall  have  jurisdiction  over  an
> action  under  this  section  based  upon  the  public
> disclosure  of  allegations  or  transactions  in  a
> criminal,  civil,  or  administrative  hearing,  in  a
> congressional,  administrative,  or  Government
> Accounting  Office  report,  hearing,  audit,  or
> investigation,  or  from  the  news  media,  unless  the
> action  is  brought  by  the  Attorney  General  or  the
> person  bringing  the  action  is  an  original  source
> of  the  information.
>
> (B)  For  purposes  of  this  paragraph,  "original
> source"  means  an  individual  who  has  direct  and
> independent  knowledge  of  the  information  on  which
> the  allegations  are  based  and  has  voluntarily
> provided  the  information  to  the  Government  before
> filing  an  action  under  this  section  which  is
> based  on  the  information.

31 U.S.C. § 3730(e)(4)(A), (B) (1986–2010).  "The purpose of the public disclosure bar is 'to prevent 'parasitic' *qui tam* actions in which relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous

---

[5] Given the Court's holding that the pre-PPACA version of the FCA applies here, all references to the statute are to that version unless otherwise noted.

disclosures of government fraud.'" *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 578 (E.D. Va. 2011) (citations omitted).

In order to determine whether the public disclosure bar eliminates federal court jurisdiction, a district court first must identify the claims in the relator's complaint. *Id.* Here, the relevant claims concern the submission by Defendants of fraudulent timesheets for ROWPU services from September 1, 2004 through April 2005 for Ar Ramadi and for January 2005 for Al Asad.

Second, a district court then must analyze each claim under the Fourth Circuit's standard for the public disclosure bar. *Id.* The Fourth Circuit follows a three-step approach. *See United States ex rel Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F.3d 292, 299 (4th Cir. 2008), *overruled on other grounds by Wilson*, 559 U.S. at 301. As recently summarized by this Court:

> First, a district court must determine whether there is a "public disclosure" within the meaning of the FCA that covers the claim in question. If not, the claim is not subject to the public disclosure bar. If there is a public disclosure that covers the claim, the district court must then determine whether the relator's claim is "based upon" the public disclosure. If not, the claim is not barred. But if the claim is "based upon" the public disclosure, the district court must determine whether the relator is an "original source" of the information on which his claim is based. The relator has the burden of

16

>           proving    each    jurisdictional    fact    by    a
>           preponderance of the evidence.

*Prince*, 753 F. Supp. 2d at 578 (internal quotations and

citations omitted).   "Unless 'the jurisdictional facts are

intertwined with the facts central to the merits of the

dispute,' the district court may then go beyond the allegations

of the complaint and resolve the jurisdictional facts in dispute

by considering evidence outside the pleadings, such as

affidavits."  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d

337, 348 (4th Cir. 2009).

### 1.   Is There a Qualifying Public Disclosure?

"To determine whether there is a qualifying 'public

disclosure' relating to a claim, a district court must address

three issues."  *Prince*, 753 F. Supp. 2d at 579.  The first issue

is whether the disclosure occurred in one of the sources

enumerated in the statute.  *Id*.  Section 3730(e)(4)(A)

enumerates "three sources: (1) in a 'criminal, civil, or

administrative hearing'; (2) in a 'congressional,

administrative, or Government Accounting Office report, hearing,

audit, or investigation'; or (3) in the 'news media.'"  *Id*.

(quoting 31 U.S.C. § 3730(e)(4)(A)).

The second issue is "whether the disclosure was made

'public' prior to the filing of the complaint."  *Id*. at 580.

"Although the Fourth Circuit has not construed the term 'public'

17

as used in § 3730(e)(4)(A), other circuits have done so,
reaching essentially similar results" of "generally available to
the public" or "in the public domain." *Id.*

The third issue is "whether the public disclosure
reveals 'allegations or transactions,' and not merely
information." *Id.* (citation omitted). "[T]o qualify as a
'public disclosure,' a disclosure must reveal an allegation of
fraud, or a false and true state of facts from which fraud may
be inferred."[6] *Id.*

Here, Defendants identify four disclosures that they
argue bar the instant case: (1) Carter's colleague Kenneth May's
January 23, 2006 testimony before the Senate Democratic Policy
Committee,[7] (2) the complaints in 2008 Carter and 2010 Carter,
(3) the complaint in the California Action,[8] the Maryland Action,
and the Texas Action, and (4) this Court's May 10, 2010

---

[6] In *Prince*, the Court noted that "[a]lthough the Fourth Circuit has not
specifically construed the phrase 'allegations or transactions' within the
meaning of § 3730(e)(4)(A), many circuit courts have done so, adopting the
D.C. Circuit's interpretation of the phrase." 753 F. Supp. 2d at 580. This
Court agrees with *Prince* and, thus, applies it here.
[7] *See An Oversight Hearing on Whether Halliburton Has Failed to Provide Clean
Water to United States Troops in Iraq, Before the Senate Democratic Policy
Comm.*, 109th Cong. 3 (Jan. 23, 2006) (statement of Ken May), *available at*
http://dpc.senate.gov/dpchearing.cfm?h=hearing27. Carter offers this
testimony as Exhibit 6 to his original Opposition.
[8] The complaint in the California Action was unsealed in April 2010. *See*
ORDER Unsealing Complaint, *United States ex rel. Thorpe v. Halliburton Co.*,
No. 05cv08924 (C.D. Cal.) [Dkt. 34] (filed Apr. 27, 2010, entered Apr. 29,
2010).

Memorandum Opinion in 2008 Carter.[9]  (Mem. at 16-17 & n.12; Supp. Mem. at 4-5.)

First, all these disclosures are qualifying public disclosures except for the Texas Action, which was and remains sealed.  The January 2006 Senate Hearing clearly qualifies under 31 U.S.C. § 3730(e)(4), *Prince*, 753 F. Supp. 2d at 579, and "civil complaints are regarded as 'public disclosures' in a 'civil hearing,'" *id.* at 596.  Judicial opinions may be considered public disclosures as well.  *See United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994) (noting that "any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)"); *see also McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1253 (11th Cir. 2007).  Second, the hearing, the California Action, Maryland Action, and 2008 Carter and 2010 Carter were all "public," as they were in the public domain prior to the filing of the instant complaint.  *Prince*, 753 F. Supp. 2d at 569.  And third, each of these reveals "an allegation of fraud." *Id*.  The California Action, Maryland Action, 2008 Carter, and 2010 Carter plainly allege fraud, and May's Senate Hearing

---

[9] Defendants do not discuss this last category of disclosures in their supplemental brief.

19

testimony does as well.  (Opp. Ex. 6 (noting "time card fraud"
and "fraudulent documentations and overbilling".)  Moreover,
"[t]o constitute a 'public disclosure' sufficient to negate FCA
jurisdiction, a disclosure need not specifically show fraud, but
must merely be sufficient to put the government on notice of the
likelihood of related fraudulent activity." *Lopez v. Strayer
Educ., Inc.*, 698 F. Supp. 2d 633, 641 (E.D. Va. 2010) (internal
quotation marks and citations omitted).  Thus, there were public
disclosures of the fraud allegations alleged in the instant
complaint before it was filed on June 2, 2011.

>    2.    Are Carter's Instant Allegations "Based
>          Upon" the Public Disclosures?

Having found qualifying public disclosures, the Court
next turns to whether Carter's allegations are "based upon" any
of these disclosures.  "A public disclosure, by itself, does not
trigger the public disclosure bar under the pre-2010 FCA;
rather, the relator's allegations must also be 'based upon' the
public disclosure." *Prince*, 753 F. Supp. 2d at 582 (citing 31
U.S.C. § 3730(e)(4)(A)).  In the Fourth Circuit, "a *qui tam*
action is barred only if the relator's allegations are actually
derived from public disclosures:

> [A] relator's action is 'based upon' a public
> disclosure of allegations only where the relator
> has actually derived from that disclosure the
> allegations upon which his *qui tam* action is
> based.  Such an understanding of the term 'based
> upon,' apart from giving effect to the language

> chosen by Congress, is fully consistent with
> section 3730(e)(4)'s indisputed objective of
> preventing 'parasitic' actions, . . . for it is
> self-evident that a suit that includes
> allegations that happen to be similar (even
> identical) to those already publicly disclosed,
> but were not actually derived from those public
> disclosures, simply is not, in any sense,
> parasitic.

*Id.* (quoting *Siller*, 21 F.3d at 1348).[10]   "Thus, a *qui tam* action

will not be barred if the plaintiff's claims are similar or even

identical to the publicly disclosed allegations, so long as the

plaintiff had independent knowledge of the facts and did not

derive his allegations from the public disclosure itself." *Id.*

(internal quotation marks and citations omitted).  Although a

relator's claim must be "actually derived" from the publicly

disclosed allegations, "it is important to note that §

3730(e)(4) bars jurisdiction over a relator's claim if the claim

is even partly derived from a public disclosure." *Id.*  "The

relators have the burden of proving that their claim was not

derived from the [public disclosure]." *Id.* at 589 (citing

*Vuyyuru*, 555 F.3d at 348).

   Carter's allegations are not "based upon" the

qualifying public disclosures because the Court finds that

---

[10] The amended § 3730(e)(4)(A) no longer uses the phrase "based upon" and now
bars claims "if substantially the same allegations or transactions as alleged
in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A)
(2010).  In *Prince*, this Court noted that "*Siller's* interpretation of 'based
upon' has been criticized by many circuits. . . . Notwithstanding this
criticism, *Siller* remains the law in the Fourth Circuit for cases prior to
the FCA's 2010 amendment." *Prince*, 753 F. Supp. 2d at 582-83.

Carter has shown that he had independent knowledge of the facts underlying his claim and that he derived his allegations from his own independent knowledge. *Id.*   Defendants first argue that Carter actually derived his allegations from Kenneth May's Senate testimony.  (Mem. at 19-21; Supp. Mem. at 8-9.)   The entirety of May's testimony addressing time card fraud is: "The disregard for essential health, safety and security measures, *time card fraud, fraudulent documentations and overbilling* . . . made life at Ar Ramadi nearly unbearable."  (Opp. Ex. 6 (emphasis added).)   Defendants argue that Carter borrowed from May's allegations, especially the assertion that it was routine practice for KBR employees to record on their timecards hours they did not work.  (Mem. at 20-21.)   Defendants' evidence that Carter borrowed from May is November 2005 e-mails between the two.  (*Id.* Ex. 8.)   These e-mails, however, are not by themselves public disclosures.

        The Court finds that the record establishes that it is more likely than not that Carter derived his allegations from his own personal knowledge and not from May's Senate testimony or, for that matter, from May's e-mails.  *Prince*, 753 F. Supp. 2d at 589.  Carter testified that he first was instructed to record 12 hours on his time card when he arrived at Al Asad, his first location in Iraq.  (Carter Dep. Tr. 25:17-26:3 (Opp. Ex. 9).)   According to Carter, he was told to go to the RWOPU

foreman at Al Asad and ask if there was work to be done while
Carter was waiting, and the foreman would "sign off on
[Carter's] 12 hours for the days that [Carter] was at Al Asad."
(Carter Dep. Tr. 26:14-19.)  Carter also testified that "the
first day or the second day" he was in Ar Ramadi, Walter Meyers,
who was the ROWPU foreman at Ar Ramadi, (Compl. ¶ 59), told
Carter that even though there was no operating ROWPU with which
to work, Carter could still report that he had worked 12 hours.
(Carter Dep. Tr. 30:9-22.)  Carter also testified that a
representative of Defendants told him "on either the first
Sunday or the second Sunday" that he was at Ar Ramadi that "on
Sundays we would get our 12 hours but we were to either be
playing softball or watching softball or washing our vehicles or
cleaning our hooch."  (Carter Dep. Tr. 29:1-8.)  Carter
essentially testified that his knowledge of time card fraud at
Al Asad and Al Ramadi came from his own experiences there.
Thus, "on this record, it seems more likely that [Carter]
derived [his] allegations . . . from the facts learned by
[Carter] during [his] employment" with Defendants "than from a
single [statement]" in May's Senate testimony that "does not
provide any details about fraudulent payments" by Defendants.
*Prince*, 753 F. Supp. 2d at 590.

Defendants make much of the November 2005 e-mail
exchanges between Carter and May.  (Mem. at 23-25; Supp. Mem. at

8-9.)  Defendants appear to try and bring May's statements in these e-mails into his Senate testimony.  (Mem. at 19-20.)  May, however, did not testify to any of the facts within the e-mails. Although they are not qualifying public disclosures, Defendants appear to use these e-mails to negate Carter's independent knowledge.  Defendants argue that throughout the discussions embodied in these e-mails, Carter and May's correspondence makes it clear that May was the one with firsthand information underlying the timekeeping allegations.  (*Id.*)

        Carter and May's deposition testimony, however, undermine any contrary inferences raised by these email discussions.  As set forth above, Carter testified that his first knowledge of billing for time not worked came when he first arrived at Al Asad and on his first or second day at Al Ramadi.  May, in contrast, testified that he "can only speak for what [he] did on [his] time cards," that he never heard instructions from a supervisor to an employee to bill twelve hours per day, and that he only could infer that that direction was given based on the widespread practice of employees billing twelve hours per day ever day.  (May Dep. Tr. 78:5-19 (Opp. Ex. 7).)  Also as set forth above, Carter learned about the Sunday practices of billing for playing softball or doing nothing on his first or second Sunday at Al Ramadi.

Carter additionally testified to his own experience with the mechanics of submitting time cards and supervisors' participation in filling them out.  Carter stated that the time card recording procedure changed "sometime in February" of 2005, when Walter Meyers and Tom Smith "required that we leave our time sheets in . . . Walter's office, and we would then fill them out at 7:00 p.m. in front of Walter and Warren Smith." (Carter Dep. Tr. 36:2-6.)  Carter then testified that "Walter required [Carter to] be responsible for Dale Lehew, the ROWPU operator underneath [Carter at Ar Ramadi, (Compl. ¶ 59)], so [Lehew's] hours matched [Carter's] hours . . . [s]o Walter instructed [Carter] to take care of Dale Lehew's time sheet." (Carter Dep. Tr. 36:7-16.)  In contrast, May's deposition testimony indicates that May lacked direct knowledge of many of these allegations.  He testified that at a certain point in time, which he could not recall, that "all of a sudden the supervisors were bringing in all the time sheets that were already signed.  And then I would assume that there were completed by the employee.  But according to Ben [Carter], they were written down by the supervisors, the hours worked."  (May Dep. Tr. 86:12-19.)  May testified that "[he] can't say whether it happened or not because [he] didn't see it.  So it makes sense what [Carter] says."  (May Dep. Tr. 86:20-22.)  This testimony, given its detail, establishes that it is more likely

25

than not that Carter had independent knowledge of the facts underlying his claim and that he derived his allegations from his own independent knowledge. *Prince*, 753 F. Supp. 2d at 589.

Next, Defendants argue that the California Action and Maryland Action are public disclosures barring jurisdiction in this case, but spend little to no time specifically arguing how Carter supposedly derived his allegations from these actions. (Mem. at 17 n.12; Supp. Mem. at 4-5, 7-9.)  They point only to the fact that at the time of Carter's original complaint, his then-lawyer already had filed the California Action, raising the inference that Carter's claims were derived from that public disclosure.  (Supp. Mem. at 9 n.10 (citing *Prince*, 753 F. Supp. 2d at 595 (noting that the inference that a relator's claims are derived, at least in part, from public disclosures is stronger where "relators' counsel has filed complaints with similar allegations in other suits").)  Critically in *Prince*, however, the relators' counsel also had "admitted to deriving some of the information underlying the [relators' claim] from the public domain."  753 F. Supp. 2d at 595 & n. 52.

Despite the weak inference raised by the fact that Carter's then-lawyer also had filed the California Action, the Court finds that Carter has met his burden of proof that he did not base his allegations on the public disclosures of the California Action and Maryland Action and that he had knowledge

independent of those public disclosures.  Although the Fourth Circuit affirmed that the general similarities between the allegations underlying the Carter litigation and those other cases are sufficient to make them "related actions" for purposes of the *first-to-file* bar, Carter has shown that he has knowledge independent of those public disclosures.  Carter testified that he had independent knowledge of his allegations, as set forth above, with details regarding the time and place of where and when he gained his knowledge.  Based on that record, the Court finds that he has proven by a preponderance of the evidence that he did not derive his claims from the public disclosures of the California Action and Maryland Action.  In addition, the allegations in the California Action, as this Court noted in its May 10, 2010 Memorandum Opinion addressing the first-to-file bar in 2008 Carter, encompassed activity from December 2001 on, across all of the countries covered by the LOGCAP III contract, thus including, but not specifically naming, the Al Asad and Ar Ramadi bases.  (Mem. Op. at 12, 1:08cv1162 [Dkt. 306] (May 10, 2010).)  This Court found that at no time were the California relators stationed with Carter or at Al Asad and Al Ramadi.  *Id*. at 12-13.  The absence of these specific allegations in the California Action strengthens the inference that Carter learned the details of his allegations based on his own personal knowledge.

27

Finally, for similar reasons, the Court rejects Defendants' argument that Carter's Action is barred by 2008 Carter, 2010 Carter, and this Court's May 10, 2010 Memorandum Opinion.  Defendants do not explain how Carter "derived" the instant complaint from any of these sources for purposes of the public disclosure bar.  Their argument as to Carter's own prior complaints is particularly untenable.  The public disclosure bar is designed to eliminate parasitic lawsuits. *See Graham Cnty.*, 559 U.S. at 294-95.  In contending that the instant suit is barred by 2008 Carter and 2010 Carter, Defendants in essence argue that Carter should be treated as a parasite of himself. This is illogical.

Accordingly, as the Court concludes that it is more likely than not that Carter did not base the instant action on previous public disclosures but rather derived his allegations from his own independent knowledge, the public disclosure bar does not apply here.

### 3.   Is Carter an "Original Source"?

Even assuming Carte's allegations were based upon public disclosures in part, the Court finds Carter has shown by a preponderance of the evidence that he was an original source. The pre-2010 "[s]ection 3730(e)(4)(B) defines 'original source' as an individual who has direct and independent knowledge of the information on which the allegations are based and has

28

voluntarily provided the information to the Government before filing an action.'" *Prince*, 753 F. Supp. 2d at 583 (quoting 31 U.S.C. § 3730(e)(4)(B)). A relator's knowledge "is 'direct' if he acquired it through his own efforts, without an intervening agency, and it is 'independent' if the knowledge is not dependent on public disclosure." *Id.* (internal quotations marks and citations omitted). "Further, while a relator does not need to have direct and independent knowledge of all the information on which a *qui tam* action is based, the relator must have direct and independent knowledge of the facts necessary to plead a plausible fraud claim." *Id.*

For the reasons set forth above, Carter has shown direct and independent knowledge of the facts necessary to plead a plausible fraud claim. *Id.* It is direct because Carter acquired it through his own efforts and without intervening agency, and it is independent because it is not dependent on public disclosure. *Id.* Moreover, the original source requirements are intended to "adequately identify legitimate *qui tam* actions and weed out parasitic plaintiffs who offer only secondhand information, speculation, background information or collateral research." *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, No. 3:07CV290, 2011 WL 129842, at *11 (E.D. Va. Jan. 12, 2011). Carter testified that he directly and independently learned of the time card fraud from his own

29

employment at Al Asad and Al Ramadi.  Contrary to Defendants'
assertions and the facts in *Black*, Carter did have access to the
relevant "books and records of Defendants" and the "specific
documents used to make the false or fraudulent claims": he
personally witnessed and was made to participate in the
falsification of timecards, the specific document upon which the
false and fraudulent claims by Defendants to the government were
based.  494 F. App'x at 296.  For the reasons more thoroughly
set forth above in the previous step of analysis, the Court
finds that Carter has shown by a preponderance of the evidence
that he is not a "plaintiff[] who offer[s] only secondhand
information, speculation, background information or collateral
research." *Collegiate Funding Servs.*, 2011 WL 129842, at *11.
Thus, even assuming Carter's allegations partially were based on
public disclosures, he has shown that it is more likely than not
that he was the original source of his allegations.

## IV.   Conclusion

For the foregoing reasons, the Court will deny
Defendants' Motion to Dismiss based on the FCA's public
disclosure bar.  In accordance with the affirmed dismissal on
the grounds of the FCA's first-to-file bar, however, the Court
will dismiss Relator's Complaint without prejudice.

An appropriate Order will issue.


_____
                                /s/
September 19, 2013              James C. Cacheris
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE

31